## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **WALTER D. HILL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No.   11-cv-172-JPG-SCW** |
| ) | |
| **JOSEPH R. MURPHY and BRAD** ) | |
| **ROESSLER,** ) | |
| ) | |
| **Defendants.** | |

### REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

#### INTRODUCTION

This matter is before the Court on Defendants' motion to dismiss for Plaintiff's failure to pay the filing fee (Doc. 161).   Defendants seek to strike Plaintiff's appointed counsel and dismiss his case because he has not paid his entire filing fee.   Plaintiff has filed a response to the motion (Doc. 162) and Defendants have filed a reply (Doc. 164). In response to the motion, the undersigned directed Plaintiff to provide the Court with an updated financial statement since he has been released from prison (Doc. 168). Plaintiff provided that statement on June 29, 2016 (Doc. 169).   Defendants then filed a response to that statement (Doc. 172) and Plaintiff has filed a reply (Doc. 173).

The matter has now been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge J. Phil Gilbert pursuant to **28 U.S.C. §§ 636(b)(1)(B) and (c)**, **Federal Rule of Civil Procedure 72(b)**, and **Local Rule 72.1(a)**.

Based on the following, it is **RECOMMENDED** that the Court **DENY** the motion to dismiss (Doc. 161).

FACTUAL BACKGROUND

Plaintiff filed his complaint on March 7, 2011 (Doc. 1).   At the time that Plaintiff's complaint was filed, Plaintiff was incarcerated.   Subsequent to filing his complaint, Plaintiff sought leave to proceed *in forma pauperis* (Doc. 6) and provided the Court with his prison trust fund statement showing that he had an available balance of only $86.04 (Doc. 7).   Thus the Court granted Plaintiff leave to proceed *in forma pauperis* and directed Plaintiff to pay an initial filing fee of $67.27, with additional monthly payments of 20% of the preceding month's income credited to his prisoner account (Doc. 19).

Since that time, Plaintiff's case has been dismissed, judgment entered, an appeal filed, and some claims reversed and brought back before this Court (See Doc. 93). Plaintiff has also been released from prison in that time period.   On December 8, 2015, the Court appointed counsel for Plaintiff (Doc. 115).

This matter is now before the Court on Defendants' motion to dismiss for failure to pay the filing fee (Doc. 161).   Defendants argue that Plaintiff has not paid the initial, partial filing fee and that he is now released from prison and appears capable of paying the fee, yet has chosen not to do so.   As evidence of Plaintiff's apparent ability to pay, Defendants point to a post on Plaintiff's Facebook page which shows that he has acquired a used Cadillac Escalade.[1]   Due to the fact that Defendants' believe that

_____

[1] Defendants suggest that the post says "always ride LaK" meaning "like a king".   Plaintiff argues that

Plaintiff has the funds capable of paying his initial fee with the Court but he has chosen not to pay, Defendants argue that Plaintiff's *in forma pauperis* status should be revoked and his case dismissed.   Plaintiff, in response, argues that there is no evidence that he intentionally depleted his prison account so as not to pay and that he believed that the prison, at the time he was incarcerated, was making the payments to the Court.   The Court received four payments while Plaintiff was incarcerated and has collected a total of $57.00 from Plaintiff (Doc. 162-1, p. 1).   Plaintiff also notes that he is currently unemployed and is leasing the 2002 Cadillac Escalade.   Defendants, in reply, argue that Plaintiff squandered his funds by leasing a Cadillac and that he has had an opportunity to pay towards his filing fee since his release and has failed to do so.

In response to Defendants' motion, the Court directed Plaintiff to provide an updated financial statement to determine whether *in forma pauperis* status was still proper.   Plaintiff filed that statement on June 29, 2016 (Doc. 169-1).   The statement indicates that he receives approximately $529.00 in wages every two weeks and that he has received approximately $250.00 from friends and family to pay for living expenses (*Id*. at p. 1).   He also states that his checking account is currently $400.00 in the negative. Plaintiff admits that he leases a 2002 Cadillac Escalade (*Id*.).   Plaintiff's expenses are listed as follows:   rent $450.00, electric bill $130.00, water and sewer bill $100.00, bank overdraft $400.00, cell phone $30.00, gas $180.00, and food $150.00.   He also pays $164.00 in support to his daughter and another daughter he provides an unspecified

---

the statement actually means "Always ride Cadillac!" with "LaK" being slang for Cadillac.

amount of funds to her mother (*Id.* at p. 2).   Plaintiff also indicates that he has student loans totally $100,000, child support payments of $20,000, and credit card debt of $1,500 (*Id.*).

Defendants have responded to Plaintiff's financial statement.   Defendants argue that Plaintiff's submission only provides a snapshot of his financial situation for the past two weeks and does not provide any documentation to support his claims.   Defendants also argue that Plaintiff's statement is in conflict with his previous deposition testimony. Plaintiff testified at his deposition that he provides his two daughters with funds in the amount of 20% of his income and that he previously had a job with Aerotek paying $21.50 an hour.   While he did indicate in his statement that he received money from friends and family for living expenses, Defendants note that Plaintiff's friend Alvin Parks previously testified that he provided him with a $200 loan even though Plaintiff did not recall any loan from Parks.   Defendants indicate that it is not clear from the financial statement whether the $250.00 he received from friends and family included this loan from Parks.   Defendants also argue that Plaintiff has not substantiated the $400.00 in overdrafts on his checking account and even though he indicated on the statement a $100,000 student loan debt, he testified at his deposition that he was not required to make payments towards that debt.

Plaintiff has responded to the additional allegations made by Defendants. Plaintiff argues that none of the statements in his deposition indicate that he misrepresented his financial situation in his financial statement.   Plaintiff argues that he

was not required by the Court to provide supporting documentation for his financial statement and the Court did not require a specific time period for reviewing Plaintiff's financial status, thus Plaintiff provided his current financial status.   Plaintiff also points out that there is no inconsistency between his statement regarding child support and his deposition testimony that he pays 20% in child support.   While Plaintiff testified that 20% of his check went to child support, Plaintiff points out that Defendants never asked for the monetary value of those payments and Plaintiff has now provided those amounts with his financial statement.   As to Plaintiff's student loan, Plaintiff points out that he clearly explained at the deposition that although he has requested a hardship exception to repaying his loan, it has not yet been approved and the loan is still considered a debt that Plaintiff must pay.

## ANALYSIS

The undersigned first notes that Defendants have not provided a basis for dismissal of Plaintiff's claims.   Defendants have not moved for dismissal under Federal Rule of Civil Procedure 12(b) nor do Defendants initially argue that Plaintiff should be sanctioned by dismissal for some improper conduct.   Instead, Defendants seek dismissal on the basis of **28 U.S.C. § 1915(a)(1)** and a Facebook post.   Defendants argue that Plaintiff's case should be dismissed because they believe he clearly has funds to pay for his case given the fact that he posted on Facebook that he bought a Cadillac Escalade (Doc. 161-1, p. 1; Doc. 172, p. 1 ("This motion is pending because Plaintiff, now released, boasts of his Cadillac Escalade while owing filing fees…")).   However, a single

Facebook post, standing alone and taken, arguably, out of context, does not provide a sufficient basis to dismiss Plaintiff's case for failure to pay the filing fee.

As Plaintiff was a incarcerated at the time he filed his complaint, under **28 U.S.C. §1915(a)(1)** the Court was allowed to authorize Plaintiff to proceed without prepayment of fees if an affidavit provided by the plaintiff demonstrate that "the person is unable to pay such fees or give security therefor."   When funds exist, the Court shall assess and "collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent…" **28 U.S.C. § 1915(b)(1)**.   Afterwards, the prisoner must make "monthly payments of 20 percent of the preceding month's income credited to the prisoner's account" with the prison forwarding the required amount to the clerk of court.  **28 U.S.C. § 1915(b)(2)**.   "In no event shall a prisoner be prohibited from bringing a civil action…for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."  **28 U.S.C. § 1915(b)(4).**

At the time that Plaintiff filed his complaint, he was incarcerated.  The Court determined that he was eligible for pauper status and directed Plaintiff to pay $67.27 as his initial partial filing fee.   As an incarcerated individual, it was up to the prison to forward 20% of Plaintiff's trust fund until the initial filing fee was made.   Plaintiff states in his motion that the prison made four payments to the Court prior to his release, from his prisoner trust fund, and to the extent that the prison did not properly deduct the full amount, Plaintiff cannot be held accountable for that failure.   The Court agrees.   There is no indication in the records that Plaintiff had money in his trust fund account that was

not properly paid towards the filing fee or that he purposefully depleted the account to avoid payment. The Seventh Circuit has acknowledged that prisoners have very limited control over how the prison handles their trust fund account and the Court will not hold Plaintiff liable for funds not paid by the prison out of that fund. ***Thomas v. Butts*, 745 F.3d 309, 313 (7th Cir. 2014).** Defendants do not appear to dispute this.

Instead, Defendants argue that since Plaintiff's release from prison, he is obligated to continue those payments to the Court. Defendants argue that Plaintiff purposefully did not make those payments and instead bought a Cadillac Escalade with funds that he could have used towards his filing fees. As the provisions of §1915 prohibit the Court from preventing a prisoner from pursuing a case simply for lack of funds, the Court must determine whether Plaintiff was at fault for not paying the initial filing fee. ***Thomas v. Butts*, 745 F.3d 309, 312 (7th Cir. 2014).** If an inmate "intentionally depleted his account to avoid payment," the Court has discretion to dismiss the action. ***Id.* (quoting *Wilson v. Sargent*, 313 F.3d 1315, 1321 & n. 7 (11th Cir. 2002)).** The PLRA only directs that funds be deducted "*when funds exist*." **28 U.S.C. § 1915(b)(1) (emphasis added).**

Here, Defendants argue that the Facebook posting shows that Plaintiff had funds to pay the initial filing fee but chose to "squander" those funds by purchasing a Cadillac. The Court does not agree. The Facebook page only shows that Plaintiff has a Cadillac Escalade. It does not indicate the amount that Plaintiff paid for this vehicle. Plaintiff indicates in his responsive brief that he leases the vehicle. Plaintiff notes that the

vehicle is a 2002, is leased, and it provides him with a means to, at the time, travel to job interviews (as he was unemployed at the time of the filing).   Plaintiff later stated that the lease is $225.00 per month.   While an Escalade is not what the Court would call an economical vehicle, the Court does not find that the leasing of this vehicle to travel to Plaintiff's employment or to interviews for possible employment constitutes a "squandering" of Plaintiff's resources such that dismissal is warranted.   Nor does the monthly expense present any evidence of "squandering" on Plaintiff's part.   And the simple leasing of the vehicle, without something more, does not evidence Plaintiff's present ability to pay his filing fee, contrary to Defendants' argument otherwise (Doc. 164, ¶ 3).

In light of Plaintiff's release from prison, the Court did order Plaintiff to provide his updated financial statement, which he produced on June 29, 2016 (Doc. 169-1).   The statement makes clear that Plaintiff is not currently in a financial position to pay towards his initial partial filing fee.   While Plaintiff does bring home $529.00 every two weeks, approximately $1058.00 per month, Plaintiff has extensive expenses and debts.   He owes rent and bills for basic necessities.   He also is in debt with child support, student loans, medical bills, and credit card debt.   His checking account is currently in the negative to the amount of $400.00.   A review of this statement does not show a man who is squandering his resources or intentionally depleting his account to avoid payment to this Court.   Instead, Plaintiff appears to be marred by the normal costs of living.

Defendants implore the Court to find that Plaintiff has misrepresented his current financial state to the Court and that his case should be dismissed for those false statements.   **28 U.S.C. § 1915(e)(2)(A) ("the court shall dismiss the case at any time if the court determines that – the allegation of poverty is untrue…").**   But the Court does not find that Plaintiff presented any false statements to the Court in documenting his financial status.   Defendants point out that the report is only a snapshot of Plaintiff's financial state and that he should have provided more information, including a former job making $21.50/hour, and that he failed to provide document to support some of his statements, including a negative balance in his checking account.   However, the Court did not ask the Plaintiff to present such information.   The Court only directed Plaintiff to provide a *updated* financial statement.   The Court did not require a certain time period for the statement nor did the Court direct Plaintiff to provide any supporting documentation.   As such, Plaintiff used a modified form for a request to proceed *in forma pauperis*.   The Court will not now fault Plaintiff for failing to provide items not asked of by the Court.

The Court also does not find that statements regarding Plaintiff's source of income and expenses to be misleading.   Defendants argue that Plaintiff provided an exact amount for his child support, approximately $164.00 per week, when he testified at his deposition that he paid 20% of his income towards child support.   However, these statements do not appear to be in conflict nor has Defendants offered any evidence of a conflict.   As Plaintiff's counsel points out, the Defendants never asked Plaintiff about

the specific dollar amount of child support.   Defendants also make much of the fact that Alvin Parks testified at his deposition that he provided Plaintiff with a $200.00 loan. Although Plaintiff testified at his deposition that he did not recall such a loan, he did acknowledge that he received $250.00 in financial assistance from family members and friends.   To the extent this represents a discrepancy, if indeed it is one, the Court does not consider it sufficient proof that Plaintiff is misleading the Court about his financial situation.

Finally, Defendants argue that Plaintiff stated in his financial statement that he had $100,000 student loan while he testified at his deposition that he did not have to make payments towards that loan.   But that is a mischaracterization of Plaintiff's testimony.   A review of the transcript, provided by Defendants, indicates that Plaintiff stated that he still had the loan and that it was still accumulating interest but that he was not making payments towards the loan because he did not have the funds (Doc. 172-1, p. 18).   Plaintiff specifically stated he could not afford to pay the bill and he was in a hardship (*Id*.).   He did not say that he was not required to make payments by the Department of Education only that he had requested a hardship from the Department but had not heard back (*Id*. at p. 18-19).   Thus, the Court does not find that Plaintiff lied or misled the Court in his most recent financial statement.

As the Court finds no evidence that Plaintiff misled the Court on his current financial statement or that he is squandering his resources so as not to pay his filing fee, the undersigned will not recommend dismissal of Plaintiff's claims for non-payment or

as a sanction for any type of fraud on the Court.   The Court finds no reason to believe the statement to be an inaccurate picture of Plaintiff's current financial state and the statement demonstrates that Plaintiff is currently unable to pay his filing fee.   As such, the Court will not recommend that Plaintiff be required to pay the remaining filing fee at this time.   Should Plaintiff lose his case, he may be directed to pay costs at that time.

### CONCLUSION AND RECOMMENDATIONS

Accordingly, the undersigned **RECOMMENDS** that the Court **DENY** Defendants' motion to dismiss for failure to pay the filing fee in this case (Doc. 161).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation.   The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.   *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).**   Accordingly, Objections to this Report and Recommendation must be filed on or before **August 8, 2016.**

**IT IS SO ORDERED**.
DATED:        July 21, 2016.

/s/ Stephen C. Williams
STEPHEN C. WILLIAMS
United States Magistrate Judge