## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **WALTER D. HILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.   11-cv-172-JPG-SCW** |
| | ) | |
| **JOSEPH R. MURPHY and BRAD** | ) | |
| **ROESSLER,** | ) | |
| | ) | |
| **Defendants.** | | |

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

This matter is before the Court on two dispositive motions filed by Defendants. Defendants have filed a summary judgment motion (Doc. 183). Plaintiff has filed a response to that motion (Doc. 215) and Defendants have filed a reply brief (Doc. 221). In addition to the motion for summary judgment, Defendants have also filed a motion for judgment on the pleadings (Doc. 208). Plaintiff has also responded to that motion (Doc. 213) and Defendants have filed a reply (Doc. 214). Defendants have also filed a motion to strike speculative statements (Doc. 219) which Plaintiff has responded to (Doc. 226). There is also a reply from the Defendants (Doc. 227). These matters have been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). Based on the following, it is

**RECOMMENDED** that the Court **DENY** the two dispositive motions.   The undersigned **DENIES AS MOOT** Defendants' motion to strike (Doc. 219).

F<small>ACTUAL</small> B<small>ACKGROUND</small>

Plaintiff filed his second amended complaint against Defendants Joseph Murphy and Brad Roessler on March 9, 2016 (Doc. 136).   The complaint alleges that Defendants wrongfully entered Plaintiff's residence on March 19, 2009 and unlawfully seized his weapon and detained him.   Plaintiff's complaint alleges that Defendants violated Plaintiff's rights under the Fourth Amendment when they illegally entered and remained in Plaintiff's home without a warrant or consent, unlawfully detained Plaintiff for four hours, were deliberately indifferent to Plaintiff's medical needs, and unlawfully seized Plaintiff's firearm (Doc. 136, p. 3-4).   The facts regarding Plaintiff's claims are as follows.[1]

In March 2009, the IRS and FBI were investigating the extortion of money by Plaintiff, who, at the time, was the Deputy Liquor Commissioner in East St. Louis, IL (Doc. 183-19, p. 2).   Defendants possessed a search warrant for the East St. Louis City Hall (Doc. 183-25).[2]   Defendants planned to delay the search warrant, which was initially scheduled for March 19, 2009, should Plaintiff cooperate with the team (Doc. 183-10, p. 2).

---

[1] To the extent the undersigned refers to Plaintiff's deposition, those citations appear, for the most part, in Plaintiff's responsive brief.   While Defendants attached portions of Plaintiff's deposition to their motion, the pages are out of order making it difficult to identify the referred to page numbers in the 81 page document (Doc. 183-4).

[2] Although Defendants' affidavit indicates that the plan includes portions of the original March 19, 2009 plan to speak with Hill prior to a search warrant being executed at City Hall, that portion of the plan is absent from the attached exhibit (Doc. 183-25).

Plaintiff testified that he was awoken by a knock at his door at 9:00 a.m. (Doc. 215-1, p. 4-5).   Plaintiff thought that it was his girlfriend returning and, thus, did not put any clothes on before answering the door (*Id*. at p. 5-6).   Plaintiff testified that he opened the door a crack and Agent Murphy put his firearm in Plaintiff's face and forced his way into Plaintiff's house, with Agent Roessler following behind (*Id*. at p. 5).   Agent Murphy admitted that he had his gun drawn at the time that Plaintiff answered the door (Doc. 215-3, p. 5).   Plaintiff also testified that the agents had guns drawn but he could not describe the color of the guns (Doc. 183-4, p. 27).   Murphy testified that Plaintiff was willing to talk to them and invited them into his house (Doc. 215-3, p. 4).   Plaintiff testified that the agents forced their way into his house, with Murphy putting his gun on Plaintiff's person (Doc. 215-1, p. 6).   Defendants did not have a warrant for Plaintiff's house and Plaintiff testified they told him they didn't need one (Doc. 215-3, p. 3; 215-1, p. 8).   They were wearing plain clothes and did not have tactical gear on (Doc. 183-4, p. 20).

Plaintiff testified that Murphy had his firearm on Plaintiff as they came into his house (Doc. 215-1, p. 7).   Plaintiff was completely naked at the time (*Id*.).   He testified that Roessler continued to hold him at gunpoint while Murphy conducted a room-by-room search (*Id*. at p. 8).   According to Plaintiff's testimony Murphy stated the house was all clear and indicated in a radio for all tactical units to stand down (*Id*. at p. 8-11).   Murphy testified that they did not have radios nor was SWAT present outside (Doc. 215-2, p. 3).   Roessler testified that they only had cellphones (Doc. 215-2, p. 4).

Once Murphy completed his search, Plaintiff was allowed to put on boxers from his laundry hamper (Doc. 215-1, p. 14-15).   Plaintiff testified that he asked previously to put clothes on but that Defendants would not let him until they searched his house (*Id.*). Plaintiff testified that Murphy then pushed him down into a chair at his kitchen table (Doc. 215-1, p. 12-13).   Roessler sat across from Plaintiff with a notepad, pen, and recorder on the table.   Plaintiff testified that Murphy paced the house screaming at Plaintiff to cooperate (*Id.* at p. 16).   Plaintiff testified that Murphy threatened him that if he didn't talk it would get worse in there for him and that he pointed at a picture of Plaintiff's daughter and threatened to take him away from her (*Id.* at p. 16-17, 22). Plaintiff testified that he asked for an attorney but they told him he could only talk to the U.S. Attorney (*Id.* at p. 17).   Plaintiff testified that he was terrified (*Id.* at p. 18).

After some time sitting at the table, Murphy asked Plaintiff if he owned a firearm (Doc. 215-1, p. 19).   Plaintiff indicated that he did and that it was registered (*Id.*). Plaintiff testified that Murphy then began searching Plaintiff's house.   Plaintiff testified that he did not give Murphy permission to search the house (*Id.* at p. 20).   Murphy asked Plaintiff where the gun was located and Plaintiff indicated it was in his bedroom (*Id.*).   Murphy retrieved the gun and radioed for a weapons check (*Id.* at p. 20-21).   The weapons check came back clear (*Id.* at p. 21).   Plaintiff testified that Murphy became angry when the weapons check came back clear and that he began twirling the gun, which Plaintiff testified was loaded, and then dropped it on the ground (*Id.* at p. 22-23). Plaintiff testified he felt like he was arrested and that he would be shot if he didn't

cooperate (*Id*. at p. 22).   He testified that Murphy placed Plaintiff's gun in his back and Plaintiff never saw the gun after the day (*Id*. at p. 24).

Plaintiff testified that during the course of the discussions, he needed to use the bathroom (Doc. 215-1, p. 25).   He had to ask permission from the Defendants to use the bathroom (*Id*.).   Both of the agents accompanied Plaintiff to the bathroom and pointed guns at his head while he urinated (*Id*. at p. 25, 26-27).   Plaintiff testified that Murphy had his hand on his shoulder as he led him to the bathroom (*Id*. at p. 26).   Plaintiff testified that Murphy kept physical contact with his shoulder as Plaintiff urinated (*Id*. at p. 27).   After returning from the bathroom, Plaintiff again asked for an attorney and the agents told him he was not allowed to have an attorney (*Id*. at p. 28-30).

Plaintiff testified that he ultimately signed an agreement to call Albert Thompson (Doc. 215-1, p. 31; Doc. 183-26).   Roessler then made phone calls to Albert Thompson and Lenzie Stewart and Plaintiff talked to them (*Id*. at p. 31; Doc. 183-9).   Lenzie Stewart testified that he did not recall the phone conversation with Plaintiff (Doc. 183-9, p. 2-3).   When asked if he recalled Plaintiff ever asking him for help about anything, Stewart testified that Plaintiff once asked for help in a domestic violence investigation because he felt the officer was harassing him (*Id*. at p. 2-4).   Plaintiff testified that he did not ask Stewart for help while he was on the phone nor did he call him back after the agents left (Doc. 183-4, p. 32).

At the end of the interview, Defendants took the gun with them (Doc. 215-4). The transcription (report) indicates that it was taken because Plaintiff appeared

distraught and said if he went to jail it would be the end of his world (*Id.*).   Plaintiff signed a form allowing Defendants to take the weapon (Doc. 215-8).   The weapon was never returned to Plaintiff as Plaintiff failed to waive his rights to the weapon (Doc. 215-5).

Phone records show that after the agents left, Plaintiff made numerous calls including to H&R Block, Keisha and Cedric Taylor, and the East St. Louis Mayor's office (Doc. 183-21).   He did not call 911 (Doc. 183-4, p. 81).   Plaintiff called his lawyer, Attorney Catherine Graham, at 5:33 p.m. on March 19, 2009 (Doc. 183-21).   Plaintiff and his attorney later signed a proffer agreement with the U.S. Attorney on March 30, 2009 (Doc. 183-22).

Plaintiff was examined by Dr. Alan Felthouse as part of a Rule 35 Mental Evaluation (Doc. 215-6).   Felthouse testified that if the interrogation took place as Plaintiff described, it would have been distressing for anyone (*Id.* at p. 2; Doc. 215-7).   Felthouse diagnosed Plaintiff with, among other things, malingered PTSD (Doc. 215-7).   He was unable to establish that any mental disorder stemmed from the interrogation but did testify that Plaintiff could have suffered emotional distress from the encounter without suffering a diagnosable mental disorder (Doc. 215-7; 215-6, p. 2-3).   During the course of his interview with Plaintiff, Plaintiff indicated that he suffered nightmares, embarrassment, humiliation, changes in sleep and toilet habits, agitation, and nervousness (Doc. 215-6, p. 3).   Felthouse testified that all of these issues could be symptoms of emotional distress (*Id.*).   Felthouse's report indicated that the symptoms

Plaintiff emphasized, including anger regarding the incident, were not typical for PTSD (Doc. 183-8, p. 50).   Felthouse found Plaintiff to be malingering PTSD (Id. at p. 52).

Plaintiff indicated that he went to Chestnut Healthcare Center for mental health and substance abuse assessment and that he discussed the trauma he suffered on March 19, 2009.   Anita K. Kuehlem-Doroghazi assessed Plaintiff although she did not remember him (Doc. 183-2, p. 2).   During the assessment she wrote that Plaintiff could benefit from a psychiatric evaluation by the medical director at Chestnut to assess the extent of Plaintiff's PTSD symptoms and anxiety (Id. at p. 4).   Kuehlem-Doroghazi testified that she knows some of the symptoms of PTSD but that is not her main focus and she was not comfortable with assessing that condition, thus she recommended the referral (Id. at p. 5).   Plaintiff did not meet with the medical director (Doc. 183-15).

## LEGAL STANDARDS

### A.  Summary Judgment Standard

Summary Judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted) (citing FED. R. CIV. P. 56(a)).** *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005).**   The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and/or information obtained via discovery—the lack of any genuine issue of material fact.   *Celotex Corp. v. Catrett*, **477**

U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).** A fact is material if it is outcome determinative under applicable law. *Anderson*, **477 U.S. at 248;** *Ballance v. City of Springfield, Ill. Police Dep't*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Vill. of Slinger*, **388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, **477 U.S. at 248.** "A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee*, **246 F.3d 927, 931–32 (7th Cir. 2001) (citations and quotations omitted).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** The Court adopts reasonable inferences and resolves doubts in the nonmovant's favor. *Id.; Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008).** Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004),** *abrogated on other grounds by Spiegla II*, **481 F.3d at 966 (7th Cir. 2007).** *See also Anderer v. Jones*, **385**

**F.3d 1043, 1064 (7th Cir. 2004).**

### B. Judgment on the Pleadings

Defendants also bring a motion for judgment on the pleadings pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(c).** Rule 12(c) allows for a party to move for judgment "[a]fter the pleadings are closed – but early enough not to delay trial." Thus, such a motion can only be considered after both a complaint and an answer have been filed. *Brunt v. Serv. Employees Int'l Union*, **284 F.3d 715, 718 (7th Cir. 2002).** In analyzing a claim under Rule 12(c), the court employs the same standard as that used under Rule 12(b)(6). *Piscotta v. Old Nat'l Bancorp*, **499 F.3d 629, 633 (7th Cir. 2007).** While a plaintiff does not have to set forth detailed factual allegations, he must "'give the defendant fair notice of what the…claim is and grounds upon which it rests.'" *Id.* **(quoting** *Conley v. Gibson*, **355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).** "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, **550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).** The court must also accept all well pleaded facts as true and draw all inferences in favor of the plaintiff. *Thomas v. Guardsmark, Inc.*, **381 F.3d 701, 704 (7th Cir. 2004).** The court will grant a motion for judgment on the pleadings "only if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Id.* **(internal citation and quotation marks omitted).**

ANALYSIS

**A. Motion to Strike Speculative Evidence**

Defendants first seek to strike evidence offered by Plaintiff, namely deposition testimony from Defendants Roessler and Murphy, which Defendants argue asked them to answer on pure speculation (Doc. 219).   However, the undersigned need not decide whether the deposition testimony includes improper speculative statements as the undersigned does not rely on those statements in making its recommendations.   While there may be an issue as to whether such evidence would be admissible at trial, the undersigned will leave that determination to the trial court to be decided at trial.   As such, the undersigned **DENIES AS MOOT** the motion to strike speculative statements from the summary judgment response.

**B.  Illegal Entry**

A warrantless entry is presumptively improper under the Fourth Amendment. *Harney v. City of Chicago*, **702 F.3d 916, 925 (7th Cir. 2012) (citing** *United States v. Walls*, **225 F.3d 858, 862 (7th Cir. 2000));** *Gower v. Vercler*, **377 F.3d 661, 667 (7th Cir. 2013).**   However, when someone with authority gives an officer consent to enter the residence, then the entry is reasonable and does not violate the Fourth Amendment.   *Id.* Consent can be offered non-verbally as when an individual opens a door and steps aside so that officers can enter the premises.   *Harney*, **702 F.3d at 925 (citing** *Walls*, **225 F.3d at 862-63;** *Sparing v. Vill. of Olympia Fields,* **266 F.3d 684, 690 (7th Cir. 2001)).**   Simply

answering a knock at the door does not indicate consent.  *Sparing*, **266 F.3d at 690 (citing** *U.S. v. Berkowitz*, **927 F.2d 1376, 1387 (7th Cir. 1991)).**  Whether there is a voluntary consent to enter is an issue of fact determined by the totality of the circumstances.  *Gower*, **377 F.3d at 667.**

Defendants admit that they did not have a warrant for Plaintiff's house, thus Plaintiff would have to have given them consent to enter in order to not violate the Fourth Amendment.   Here, looking at the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has presented enough evidence for a jury to determine that there was not voluntary consent.  Plaintiff testified that he did not give the officers consent to enter his home and instead opened the door to the two officers pointing their guns at him.  Plaintiff testified that the officers then forced their way into his house when he opened the door.  Defendants admit that they had their guns drawn when Plaintiff answered the door.  Simply answering the knock at Plaintiff's door did not give Defendants consent and if the facts are as Plaintiff testified, a reasonable jury could find that Plaintiff did not give the officers consent.   While Defendants note that a "knock and talk" does not violate the Fourth Amendment.   A "knock and talk" occurs when agents believe illegal activity is occurring in a home, they then "knock on the door, and then attempt to gain consent to enter."   *U.S. v. Adeyeye*, **359 F.3d 457, 461 (7th Cir. 2004).**   But what Plaintiff testified to is much more than "knock and talk" as he testified that he never gave consent but that the Defendants forced their way into his home after he answered the front door.   Such evidence, if the jury finds Plaintiff's testimony to be

truth, would violate the Fourth Amendment.

Defendant also makes much of the fact that Defendants had a plan for how to proceed with their investigation should Plaintiff not agree to cooperate and that Plaintiff could not recall the Defendants' guns or radio.   But their proposed contingency plan does not evidence the Defendants actual actions on the date in question and Defendants admit that they had their guns out when Plaintiff answered the door.   While they testified that Plaintiff invited them into his house, Plaintiff testified that he did not and that Defendants forced their way into house.   This creates a dispute of fact and a credibility determination which only the jury can resolve.

Defendants also argue that Plaintiff assumed the risk that law enforcement would learn of his activities and arrest him when he participated in illegal activity.   But the issue before the Court is not whether Plaintiff was properly investigated or arrested, but whether the Defendants violated his Fourth Amendment rights by improperly entering Plaintiff's home without consent.   The Defendants have not cited to any case law which suggests an officer can violate an individual's Fourth Amendment rights so long as they are participating in illegal behavior at some point in time.   Nor could they. Defendants' reasoning would turn Fourth Amendment case law, to include the exclusionary rule, on its head.   The case Defendants cite to, *County Mutual Insurance Co. v. Sunbeam Products, Inc.*, **500 F.Supp.2d 986, 990 (N.D. Ill. June 22, 2007)**, has nothing to do with Fourth Amendment entry or seizures and is based on Illinois product

liability law, which is not at issue in this case.[3]   The argument is frivolous and the undersigned rejects it.

Defendants also argue that they are entitled to summary judgment on all of Plaintiff's claims, including the illegal entry claim, because Plaintiff did not suffer a stroke.   Plaintiff initially alleged that he blacked out while Defendants were in his home and that he believed that he suffered a stroke due to the stress of the incident at issue. Defendants then offer exhaustive evidence as to Plaintiff's subsequent medical treatment and expert testimony indicating that Plaintiff did not have a stroke.   Defendants argue that they are entitled to summary judgment as Plaintiff has no evidence of establishing a causal link between the incident and the alleged stroke.

But Plaintiff does not focus on the alleged stroke, appearing to abandon that injury, and instead argues that he suffered from emotional distress and PTSD from the incident.   Although Dr. Felthous, Defendant's expert, identified Plaintiff as malingering relating to his PTSD claims, he admitted that Plaintiff reported nightmares, embarrassment, humiliation, changes in bodily habits (including sleep and toiletry habits), agitation, and nervousness.   Dr. Felthous reported that those symptoms were associated with emotional distress and acknowledged that if the facts were as Plaintiff testified they occurred on March 19, 2009, those events would be distressing.   Such emotional damages are recoverable in this type of *Bivens* case.   ***See Sims v. Mulcahy*, 902 F.2d 524, 532-33 (7th Cir. 1990).**   Plaintiff can also recover nominal damages for the

---

[3] The case Defendants cite to deals with assumption of the risk as it relates to the continued use of a defective toaster.   ***County Mut. Ins. Co.*, 500 F.Supp.2d at 990.**

violation itself.  *Calhoun v. DeTella*, **319 F.3d 936, 941 (7th Cir. 2003) ("[A]t a minimum, a plaintiff who proves a constitutional is entitled to nominal damages.").**  Thus, Plaintiff has certainly presented enough facts to raise a factual dispute as to causation and damages, regardless of whether he maintains that he had a stroke (although it appears Plaintiff has abandoned that claim).

To the extent that Defendants seek to argue that Plaintiff's credibility is damaged by the allegedly false allegation that Plaintiff suffered a stroke due to Defendants' actions, credibility issues are for the jury to decide.[4]

Accordingly, it is **RECOMMENDED** that the Court **DENY** Defendants' motion for summary judgment as to this claim.

## C. Unlawful Detention

Plaintiff also alleges that Defendants unlawfully detained Plaintiff in his home. In order to establish an unlawful seizure, an individual must show that the action constituted a seizure and that the seizure was unreasonable. ***Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009) (citing *Bielanski v. County of Kane*, 550 F.3d 632, 637 (7th Cir. 2008)).**  A seizure is "generally defined in terms of an intentional limitation of a person's freedom of movement."  ***Bielanski*, 550 F.3d at 637 (collecting cases).**  A person is seized when, considering all of the circumstances, "a reasonable person would have believed that he was not free to leave." ***Bentz*, 577 F.3d at 779 (quoting *Tom v. Voida*, 963 F.2d 952, 956-57 (7th Cir. 1992)).**  An individual is seized

---

[4] The Court also notes that Defendants have filed a motion seeking dismissal as a sanction for Plaintiff's alleged falsehood regarding the stroke allegation (Doc. 229), which is not yet ripe.

when they are touched physically or "yield[] to a show of authority." ***Belcher v. Norton,*** **497 F.3d 742, 748 (7th Cir. 2007) (*California v. Hodari D.,* 499 U.S. 621, 625–26, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)).**   Even if there is a seizure, however, the seizure must be unreasonable.   ***Belcher,* 497 F.3d at 748 (citing *Donovan v. City of Milwaukee,* 17 F.3d 944, 949 (7th Cir. 1994)).**   Whether a seizure is reasonable requires attention to the facts and circumstances of each case.   ***Id.***

Here, the undersigned also finds that there are disputes of fact that prevent the Court from awarding summary judgment for the Defendants.   Plaintiff has presented evidence demonstrating that he was not able to leave while the agents where in his home.   Plaintiff testified that he was held at gun point and that he was not allowed to dress until the two Defendants searched his house, leaving him entirely naked during the search.   They then physically forced him into a chair and did not allow him to get up.   Plaintiff testified that he had to ask for leave to go to the bathroom and that Defendants led him to the bathroom at gunpoint, with the gun pointed at his head, and Murphy physically keeping his hand on Plaintiff's shoulder while Plaintiff used the bathroom.   Plaintiff testified that he asked for a lawyer several times and was denied access to one.   Certainly Plaintiff has presented enough facts from which a jury could find that he was not free to leave and that such actions by Defendants were unreasonable.

Defendants argue that they were not wearing tactical gear, that SWAT was not present, and that Plaintiff cannot describe Defendants' guns or radio, although

Defendants have admitted that they had their guns drawn, at least when Plaintiff answered the door.   Defendants also point to the fact that Plaintiff signed an agreement to record telephone calls while the agents were there and that Plaintiff spoke intelligently during those phone calls and did not ask for help during the calls or call 911 after the agents left.   However, all of these facts merely create an issue of fact and require credibility determines which are in the purview of the jury.   *Washington v. Haupert*, **481 F.3d 543, 550 (7th Cir. 2007) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder" (internal citation omitted)).**   Thus, the undersigned finds that summary judgment is not appropriate at this time on Plaintiff's detention claim.

### D. Unlawful Seizure of Property

Defendants also argue that they are entitled to summary judgment on Plaintiff's claim that Defendants improperly seized his gun.   Defendants allege illegality and collateral estoppel as grounds for awarding them judgment on Plaintiff's claim regarding his handgun.   Defendants argue that Plaintiff was not allowed to have the gun due to Plaintiff's bond conditions and due to his felony conviction, which prohibits Plaintiff from possessing a firearm.   Plaintiff points out that the handgun was legally owned by him at the time it was confiscated (Doc. 215-1, p. 19-20).   Plaintiff testified that Murphy called in a weapons check and the gun came back clear (*Id*. at p. 21).   Plaintiff also testified that it was legal and registered (*Id*. at p. 19).   While Defendants

argue that he was a prohibited person from having a gun under 18 U.S.C. § 922(g)(3) as he later admitted to doing drugs at the time, Plaintiff testified that he had never been charged with that crime (Doc. 183-4, p. 16; 183-23).   Nor is there any evidence that Defendants knew he was a prohibited person at the time they confiscated the weapon.

Nor does the undersigned find that collateral estoppel applies.   Although Defendants argue that Plaintiff had an opportunity to identify a person to give the weapon to, there is nothing to suggest that Plaintiff is now estopped from arguing that Defendants violated his rights by seizing the weapon.

Ultimately, the undersigned finds that there are issues of material fact which prevents an award of summary judgment.   Plaintiff did sign a release for the weapon (Doc. 183-24), but as Plaintiff testified that was after being interrogated for four hours and having Murphy twirl the gun and point it at him.   Thus, Plaintiff has offered facts creating a material fact as to whether his consent was voluntary.   As such, it is also **RECOMMENDED** that the Court **DENY** summary judgment on this claim.

### E. Deliberate Indifference

Plaintiff's second amended complaint alleges that Defendants were deliberately indifferent to his medical needs.   This stems from Plaintiff's testimony in his deposition that after Murphy started twirling Plaintiff's gun around and dropped it, Plaintiff started crying, broke down, and at that point blacked out (Doc. 215-1, p. 24, 28).   Plaintiff testified that he believed he had a stroke on that date (Doc. 183-4, p. 9).   However, Plaintiff appears to have abandoned that allegation and claim.   There is nothing in

Plaintiff's response relating to any deliberate indifference claim.   There are no factual statements in the responsive brief indicating that anything happened physically to Plaintiff that would warrant medical treatment which Defendants failed to provide him. As Plaintiff appears to have abandoned his deliberate indifference claim, to the extent that one is alleged in his complaint, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff has failed to state a claim for deliberate indifference at this time and **GRANT** summary judgment as to that claim.

### F.  Qualified Immunity

Defendants also argue that they are entitled to summary judgment based on qualified immunity.   Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).   It applies only to government officials who occupy positions with discretionary or policymaking authority and who are acting in their official capacities. *Harlow*, 457 U.S. at 816; *Denius*, 209 F.3d at 950.

The qualified immunity test has two prongs: (1) whether the facts shown, taken in

the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct.   *Pearson*, **555 U.S. at 232**, *see* *Brosseau*, **543 U.S. at 197**; *Wilson v. Layne*, **526 U.S. 603, 609 (1999).**   While it is often beneficial to first inquire into whether the plaintiff has shown a constitutional violation, the Court has discretion to address the second prong first in light of the circumstances of the case.   *Pearson*, **555 U.S. at 236.**

Defendants argue in their initial brief that they "acted reasonably and with qualified immunity when they knocked on Plaintiff's door" (Doc. 183, p. 18).   But qualified immunity asks whether the officer's conduct violated a clearly established constitutional right.   Here there are disputes of fact as to whether Plaintiff's rights were violated, as previously set forth in this Report.   And the right not to have agents invade a person's home without a warrant or consent and unreasonably seize an individual, as Plaintiff has testified to in this case, was clearly established long before March 19, 2009. As the Seventh Circuit pointed out, in remanding this case, if the events are as Plaintiff testified to, then Plaintiff's Fourth Amendment right "not to be subjected to an unreasonable search and seizure" would have been violated by Defendants.   *Hill v.* *Murphy*, **785 F.3d 242, 245 (7th Cir. 2015).**   As such, the undersigned **RECOMMENDS** that the Court **DENY** Defendants' request for summary judgment on the grounds of qualified immunity.

### G.  Judgment on the Pleadings

In addition to their summary judgment motion, Defendants have also filed a motion for judgment on the pleadings.  Defendants argue that Plaintiff's complaint does not contain sufficient facts regarding the alleged constitutional violations. Defendants argue that Plaintiff merely points to legal conclusions, rather than facts showing how the Defendants wrongfully entered Plaintiff's house without consent, unlawfully seized his weapon, and unlawfully detained him.   Defendants then cite to a laundry list of what they consider "threadbare allegations."

The undersigned, however, rejects the notion that Plaintiff's complaint was conclusory or threadbare.   A review of the second amended complaint shows that Plaintiff adequately set forth facts alleging an illegally entry, and unlawful seizure and detention.   Plaintiff's complaint alleges that Defendants forcibly entered Plaintiff's home without a warrant or consent, that they restricted his movements inside the house by preventing him from using a telephone, move freely about the house, or use the bathroom unassisted, and that they displayed weapons at Plaintiff throughout the four hours they were in the home (Doc. 136, p. 3).   Plaintiff also alleged that Defendants improperly seized his firearm (Doc. 136, p. 3).   These allegations are far from threadbare or conclusory.   Further, as Plaintiff points out, reading the complaint as a whole, the complaint adequately sets forth the claims alleged with sufficient notice as to the facts which make up the claim.   And the Seventh Circuit has previously stated that Plaintiff stated a viable claim for violations of the Fourth Amendment.   *Hill*, **785 F.3d at 245.**

To the extent that Defendants argue that Plaintiff failed to allege that he suffered a stroke and cannot recover for emotional damages, the undersigned notes that it has already addressed these issues previously in this Report.   It appears to the undersigned that Plaintiff is abandoning his allegation that he suffered a stroke as a result of Defendants' actions.   But as to emotional damages, Plaintiff may seek to recover those as the undersigned previously stated.   While Defendants argue that Plaintiff is barred under **42 U.S.C. § 1997e(e)**, that provision places limits on the damages that an incarcerated person may seek.   While Plaintiff was incarcerated when he filed suit, he does not seek damages related to an injury he received while incarcerated.   Plaintiff is, thus, not limited by the confines of §1997e(e).   Accordingly, Plaintiff can seek damages for emotional distress as alleged in his complaint.   Further, to the extent Defendants argue that Plaintiff failed to participate in due process proceedings regarding his seized gun, the undersigned has previously addressed this issue and finds that Plaintiff is not barred from bringing his claim that the gun was initially seized in violation of his Fourth Amendment rights.   As such, the undersigned **RECOMMENDS** that Defendants' motion for judgment on the pleadings as be **DENIED**.

### CONCLUSION AND RECOMMENDATION

Accordingly, the undersigned **RECOMMENDS** that the Court **DENY** Defendants' motion for summary judgment (Doc. 183) and motion for judgment on the pleadings (Doc. 208).   To the extent that Plaintiff's complaint raises a deliberate indifference claim, the under **FINDS** that Plaintiff has abandoned that claim, does not

offer any facts in support of that claim, and **RECOMMENDS** that the Court **GRANT** summary judgment as to that claim only.   The undersigned also **DENIES AS MOOT** Defendants' motion to strike speculative statements from Plaintiff's response (Doc. 219) as this Report does not rely on the statements at issue in Defendants' motion.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation.   The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.   ***See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).**   Accordingly, Objections to this Report and Recommendation must be filed on or before <u>**February 21, 2017**</u>.

**IT IS SO ORDERED**.
DATED: February 6, 2017.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge